# FAYETTE T. DIMICK, Admr.

*v.*

# THE CHICAGO AND NORTHWESTERN RAILWAY CO.

1. BILL OF EXCEPTIONS—*when unnecessary.* Where the court renders judgment in favor of the defendant, notwithstanding a general finding in favor of the plaintiff, there being also special findings as to certain interrogatories, and this is assigned for error, no bill of exceptions is necessary, as the motion for such judgment admits the evidence sufficient to warrant the special finding of facts.

2. SPECIAL VERDICT—*whether inconsistent with general one.* In an action against a railway company, to recover damages for causing the death

of a person, through negligence, the jury found the issues for the plaintiff and assessed his damages, but also found, in response to special interrogations, that the deceased looked and listened for the cars while driving on the highway before going upon the railroad track, both before and after passing a cornfield which obstructed the view; that before going upon the track he was told to stop, as the cars were coming, but that he did not hear this, and that no bell was rung or whistle sounded by the approaching train which caused the death; it was *held* that the special finding was not inconsistent with the general verdict, and did not justify the court in rendering judgment for the defendant.

3. NEGLIGENCE—*on the part of one killed while crossing a railroad.* Where a person, when approaching a railroad crossing, looks and listens for an approaching train before passing a cornfield which obstructed the view, and after passing the same, again looks and listens, and no warning is given him by bell or whistle, he will be guilty of no negligence on his part in going upon the track, and the fact that he is told to stop, that the cars are coming, which he does not hear, will not change the rule.

4. SAME—*on part of railroad.* Where a railroad company permits brush and other obstructions on its right of way so as to prevent the view of approaching trains by travelers on the highway crossing its track, and neglects to give any signal of danger by a train approaching the crossing, either by ringing a bell or sounding a whistle, whereby a party, in attempting to cross the track on the public road, is killed, the company will be guilty of negligence.

WRIT OF ERROR to the Circuit Court of Rock Island county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

This was an action on the case, by the plaintiff in error, as the administrator of the estate of Gilbert H. Dimick, deceased, against defendant in error, to recover damages for the death of the deceased, through negligence. The material facts appear in the opinion.

Mr. C. J. JOHNSON, and Mr. A. C. JOHNSON, for the plaintiff in error.

Mr. WILLIAM BARGE, for the defendant in error.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

On the trial the jury found the issues for plaintiff, and assessed his damages at $3,500; but the court, on motion of

defendant, under the statute then in force, rendered judgment for defendant, on the ground the special findings of fact by the jury were inconsistent with the general verdict. That decision is the only error assigned.

The action was to recover damages sustained by the widow and next of kin by reason of the death of Gilbert H. Dimick, which it is alleged was caused by the negligence of the servants of defendant. Each count contains charges of negligence against defendant, which, it is averred, contributed to produce the death of plaintiff's intestate: *First*—With negligence in running and managing its engines. *Second*—In allowing trees and brush to be standing and growing on the right of way, so as to hinder and prevent persons from discovering the approach of trains. *Third*—In not ringing a bell or sounding a whistle. *And, fourth*—With negligence generally.

At the trial both parties submitted a number of interrogatories, to which the jury returned specific and several answers. These answers are all so concise that they convey no meaning, except in connection with the questions submitted, and even then we can not be certain we accurately comprehend the meaning. Necessarily they must be construed together, if we would obtain any clear understanding of what the jury really intended to find. Any other course would make the several findings appear to be flatly contradictory, and inconsistent one with another.

Objection is made, the record contains no bill of exceptions. That, we apprehend, can make no difference. Making the motion for judgment notwithstanding the general verdict in favor of plaintiff, admits the evidence is sufficient to warrant the special findings of fact. Unless those special findings are true, there is absolutely nothing upon which defendant can rest its motion.

Construing together the special findings of fact, as well for plaintiff as defendant, we see nothing in them inconsistent with the general verdict, and no reason appears why they may not stand together. Principally, it is insisted, the facts found

show deceased omitted the usual care for his personal safety in driving upon the railroad track where the fatal collision occurred. We do not think this position can be maintained. One of the facts found is, deceased looked and listened for the cars while driving on the highway, before going upon the railroad track at the crossing; another, he looked for the cars while approaching the railroad track after he had passed the cornfield; and another, he listened for the cars after he passed the cornfield fence, and before he drew upon the railroad track at the crossing. Admitting these facts to be true, as the motion does, what more would any prudent man have done to secure his personal safety? How far this cornfield fence was from the crossing we can not know; but from the fact it is a point designated in defendant's interrogatories, we may infer it is a place where the deceased ought to have looked and listened for signals of danger, and hearing or seeing none, he might with safety proceed. But in answer to this view, it is said deceased was told " to stop, that the cars were coming." It is true the jury found the deceased was so told; but they also found he did not hear that warning. What possible difference could it make if he was told to stop, if he did not hear it? It gave him no warning of the danger at hand. By the positive findings of the jury we are informed he had previously observed every reasonable precaution any prudent man would adopt for his safety. He had looked for the approach of cars before venturing upon the track. No danger could be discovered, for the reason the view was cut off by brush and other obstructions permitted to stand on the right of way, between the track and the highway upon which he was traveling. Notwithstanding he twice listened for the signals of danger which the law made it the imperative duty of the company to give, he heard none, for the reason that, by the finding of the jury, none were given. No bell was rung and no whistle was sounded. One other all important fact found is, that had these signals been given they would have warned deceased of the approaching train in time to have avoided the collision. So far, then, from these special findings being inconsistent with the general verdict, they tend most

strongly to sustain it. We do not entertain the slightest doubt the jury themselves so understood these special findings, and to hold otherwise is to make them find a verdict they never intended to, and never would have found. Indeed, a verdict of not guilty would have been wholly inconsistent with the special facts found. According to this record, deceased observed every reasonable precaution for his personal security, while defendant omitted every duty imposed by law or by a due regard for the safety of the lives and property of citizens, when approaching a crossing of a public highway.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*